```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
HENRY MCLEAN and EDWIN RIVERA,          :
                      Plaintiffs,       :        10 Civ. 3950
                                        :           (DLC)
           -v-                          :
                                        :
GARAGE MANAGEMENT CORP., et al.,        :
                                        :
                      Defendants.       :        OPINION & ORDER
                                        :
----------------------------------------:
                                        :
LUIS RAMIREZ,                           :
                      Plaintiff,        :
                                        :        09 Civ. 9325
           -v-                          :           (DLC)
                                        :
GARAGE MANAGEMENT COMPANY LLC and       :
RICHARD M. CHAPMAN, jointly and         :
severally,                              :
                      Defendants.       :
----------------------------------------X
```

APPEARANCES:

For Plaintiffs in McLean:

Stephen H. Kahn
Kahn Opton LLP
228 E 45th St
New York, NY 10017

For Plaintiff in Ramirez:

Brandon David Sherr
Law Office of Justin A. Zeller, P.C.
277 Broadway, Suite 408
New York, NY 10007

For Defendants:

A. Michael Weber
Elias Kahn

Naveen Kabir
Michael Pappas
Littler Mendelson, P.C.
900 Third Avenue
New York, NY 10022


DENISE COTE, District Judge:

The plaintiffs, current and former Garage Managers employed by the defendants (collectively "GMC") at New York area parking garages, have brought claims against GMC alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the New York Labor Law ("NYLL"), N.Y.C.R.R. § 142-2.2, for failure to pay overtime.  In an August 29, 2011 Opinion ("the Summary Judgment Opinion"), the Court granted summary judgment to the plaintiffs on, inter alia, the following two issues: (1) GMC compensated Garage Managers on an hourly, not a salary basis, and therefore Garage Managers are not subject to the FLSA's "bona fide executive exemption", see 29 U.S.C. § 213(a)(1); and (2) the "EC bonus" payments GMC made to Garage Managers cannot qualify as overtime payments and cannot be excluded from the calculation of Garage Managers' regular pay. See generally McLean v. Garage Management Corp., 819 F.Supp.2d 332 (S.D.N.Y. 2011).  Familiarity with the Summary Judgment Opinion will be assumed.  This Opinion constitutes the Court's findings of fact and conclusions of law on whether GMC acted in

good faith, whether its violation of the labor laws was willful, and the proper calculation of damages.


PROCEDURAL HISTORY

Plaintiffs Henry McLean ("McLean") and Edwin Rivera filed their complaint in this action ("the McLean Action") on May 12, 2010.  On August 11, 2010, the Court authorized notice of a collective FLSA action.  Up to 45 current and former Garage Managers consented to join and are part of the FLSA action.  The Court denied GMC's motion to dismiss and to compel arbitration on March 29, 2011.  Following the August 29 Summary Judgment Opinion, the Court granted the plaintiffs' motion for Rule 23, Fed. R. Civ. P., class certification of their NYLL claims.  As set forth in an October 21 Order, the class period runs from May 10, 2004 to April 18, 2010.  On March 15, 2012, all opt-out requests postmarked after January 18 were ordered stricken.  The NYLL class consists of as many as 93 current and former Garage Managers.[1]  All Garage Managers in the NYLL class are also members of the FLSA collective action.

Plaintiff Luis Ramirez ("Ramirez"), a former Garage Manager, separately brought suit against GMC ("the Ramirez

---

[1] The parties dispute the presence of one individual in the collective action and one individual in the class action.

Action") on November 9, 2009.  After being reassigned to this
Court on May 12, 2010, the Ramirez Action was stayed on July 14,
2010.  The stay was lifted on October 17, 2011.  The McLean
Action and the Ramirez Action were consolidated for trial on
March 28, 2012.

The parties have consented to try all remaining issues
without a jury.  Pursuant to this Court's procedures for non-
jury trials, and without objection by the parties, the parties
submitted the direct testimony of witnesses by affidavit and
their documentary evidence with the pretrial order filed on
April 2, 2012.  GMC submitted direct testimony by affidavit for
witness Douglas Kamm ("Kamm"), GMC's Director of Personnel from
1986 to 2000 and currently its human resources and
administrative supervisor.  The plaintiffs have submitted as
exhibits the depositions of Richard Chapman ("Chapman"), an
attorney and GMC's President; and Bernard Weinstein
("Weinstein"), a GMC executive.  Both parties have also
submitted the deposition of Louis Vanegas ("Vanegas"), a former
investigator with the United States Department of Labor ("DOL").

The Summary Judgment Opinion established that GMC is liable
to the plaintiffs for violations of the FLSA's overtime
provisions as a matter of law.  The parties dispute, however,
whether GMC acted in "good faith" and with "reasonable grounds"

4

to believe that its failure to pay Garage Managers overtime did
not violate the FLSA, in which case the Court would have
discretion not to award the plaintiffs liquidated damages.  The
parties also dispute whether GMC's failure to pay overtime in
violation of the FLSA was "willful," in which case the
plaintiffs' FLSA claims would be subject to a three-year, as
opposed to a two-year, statute of limitations.

It is undisputed that GMC changed its system for paying
overtime to Garage Managers on approximately April 18, 2010.
Therefore, the plaintiffs' claims are for the period prior to
that date.  The following constitutes the Court's findings of
fact and conclusions of law.


Origination of EC Bonus System

Chapman created the compensation system for Garage
Managers, including the use of the EC bonus, prior to 1970.  He
wanted a simple procedure for the payment of overtime, and
therefore created a system that would allow GMC to pay overtime
once a month rather than on a weekly basis.  In his view, this
had the added advantage of creating an "annual package
reflecting the importance of the manager."  As Chapman regularly
explained to Garage Managers, they were getting base pay for
forty-hour work weeks and an additional payment once a month for

5

overtime hours and to compensate the Garage Managers for their
role in ensuring the profitability of their garages.

Chapman had studied labor law in law school, and was
"cognizant of the need for payment of time and a half for
overtime."  While Chapman "presumed" that Garage Managers would
not be considered hourly employees under the FLSA, he designed a
system of Garage Manager compensation that reflected a separate
payment for any overtime work as a belt and suspenders system to
"cover" himself.

The compensation of Garage Managers was calculated as
follows:  They were given an amount of weekly pay based on an
hourly rate, a monthly payment called Extra Compensation or the
EC bonus, and additional compensation for overseeing special
events and for unused vacation or benefit days.  The weekly base
pay was adjusted to reflect hours worked during a pay period,
and regularly fluctuated because of that calculation.  The EC
bonus was a pre-determined amount for an employee that did not
vary from month to month or due to the number of hours worked.
The amount of an individual's EC bonus was determined from a
number of factors including garage assignment, merit increases,
garage transfers, promotions and seniority.  A Garage Manager's
annual earnings always exceeded the agreed upon annual salaries.
GMC paid its Garage Managers generously by industry standards.

6

Garage Managers were regularly scheduled to work five days a week for more than 40 hours per week.  Most Garage Managers were regularly scheduled to work about 50 hours per week.

Government Investigations of GMC Parking Attendants:  1987 to 1993

Garage Managers supervise a number of Parking Attendants at each GMC garage.  Starting in 1987, the DOL conducted investigations of GMC's overtime pay practices for its Parking Attendants.  The investigations found violations of the overtime pay regulations, and in response to a 1993 DOL investigation GMC agreed to pay back wages to 95 Parking Attendants.

The DOL investigations concluded that because GMC's Parking Attendants were hourly employees, they were entitled to time and a half overtime pay, and that GMC's policy of paying a lump sum periodic bonus to Parking Attendants did not suffice.  This lump sum bonus was functionally identical to the EC bonus for the Garage Managers in that it did not vary from period to period or based upon the number of hours worked beyond 40 per week.

Moreover, the DOL investigations concluded that the lump sum bonuses awarded to Parking Attendants constituted part of their regular rate of pay, and that GMC's failure to factor the bonuses into a computation of the Parking Attendants' regular rate of pay violated the FLSA.  Thus, GMC was required to

7

recalculate the hourly wage by incorporating the bonus payments, and to pay overtime to Parking Attendants on the basis of that recalculated hourly wage.

Vanegas was the first DOL investigator to conduct an investigation of GMC's overtime pay practices for Parking Attendants. At the time, Vanegas was 22 years old and a recent college graduate. Vanegas' supervisor was Paul Scensny ("Scensny"), the DOL's Assistant District Director.

There were three more investigations and audits of GMC's payment practices for Parking Attendants. In addition to Vanegas' investigation, the DOL conducted an audit in 1993. The New York State Department of Labor ("NYDOL") conducted two audits, one in 1990 and another in 1997. The DOL's 1993 audit discovered additional overtime pay violations in connection with GMC's compensation of Parking Attendants. The two NYDOL audits also uncovered NYLL violations in connection with Parking Attendant compensation.

Although Vanegas' investigation focused on Parking Attendants, he did conduct an inquiry into GMC's practices in paying Garage Managers. Vanegas reviewed their time records and payroll records, visited several of the garages and spoke with some of the Garage Managers. Vanegas concluded that GMC was violating the wage and hour laws in its failure to pay Parking

8

Attendants overtime, but determined that GMC could properly
treat Garage Managers as salaried employees.  In his internal
report of the investigation, Vanegas wrote:

> Blanket overtime exemption given to managers of all
> parking garages on the basis that they were paid a
> guaranteed salary regardless of hours worked and their
> primary duty was management of the garage in which
> they worked.  Review of mgr's payroll rec'ds indicated
> that they were paid for at least 40 hrs even when they
> worked less than 40 hrs, the mgrs supervised at least
> 2 FT [full time] employees.

When Vanegas met with Kamm, then GMC's Director of Personnel, on
April 26, 1988, he communicated that Garage Managers were
subject to a blanket overtime exemption under the FLSA.  Vanegas
also provided Kamm with copies of relevant DOL regulations,
including the DOL regulation pertaining to the "salary basis
test" which must be met for an employee to qualify for FLSA's
"bona fide executive" exemption.

As it had with Vanegas, in each of the audits of GMC
payroll practices for Parking Attendants, GMC provided
government auditors with access to Garage Manager payroll
records.  According to Kamm, the NYDOL also informed GMC in both
1990 and 1997 that Garage Managers were exempt employees under
the NYLL, and a DOL senior investigator concluded in 1993 that
Garage Managers were FLSA-exempt employees.

During none of the four investigations did GMC advise the
government investigators that the base pay or compensation of a

9

Garage Manager varied based on the number of hours a Garage
Manager worked in a pay period.  If an investigator asked why a
Garage Manager's payroll records reflected an hourly rate of pay
despite GMC classifying them as salaried employees, GMC
explained that the Garage Managers were unionized and the
collective bargaining agreement ("CBA") required that their pay
meet the negotiated rate and that contributions to union benefit
funds were calculated from their hourly rate, again as required
by the CBA.

From 1986 until 2000, Kamm played a key role in assessing
whether GMC policies complied with federal and state labor laws,
including the FLSA.  Kamm reviewed the relevant statutes and
regulations, reviewed Garage Managers' duties, and interviewed
them about their jobs.  In deciding that Garage Managers were
properly classified as salaried employees, Kamm relied in
particular on (1) the fact that Garage Managers supervised two
or more employees and (2) his assessments that their duties were
primarily management-oriented and that they had responsibility
for the profitability of the business.

Because GMC considered Garage Managers exempt from overtime
regulations, the DOL and NYDOL's findings that GMC had violated
federal and state overtime laws in the manner it had structured
its compensation of Parking Attendants did not spark any

10

significant examination by Kamm or anyone else at GMC of GMC's
compensation package for Garage Managers.  They undertook
essentially no examination of whether that compensation package
might similarly run afoul of FLSA's overtime pay requirements.


2001 to Present

     In early 2001, McLean filed a complaint with the NYDOL
alleging that GMC's Garage Manager overtime pay practices
violated the NYLL.  McLean withdrew his NYDOL complaint in
May 2001.

     During this time, Weinstein was the GMC employee directly
responsible for ensuring that GMC's payment practices complied
with federal and state labor laws.  He never discussed the
FLSA's time-and-a-half overtime pay requirement with Chapman and
Gordon Hamm, GMC's CEO, and does not think he ever discussed it
with Kamm.  According to Weinstein:

> My understanding when I came to work [at GMC] . . .
> was that EC covered overtime plus extra benefits to
> the men.  And when I came to work there from the other
> company, everybody was highly paid at [GMC], and I did
> not think there was any problem.

     On November 9, 2009, Ramirez filed his complaint in the
Ramirez Action.  Weinstein was again given responsibility for
formulating GMC's response.  Nonetheless, there was no internal
discussion at GMC at the time about whether GMC should review

its Garage Manager payment practices to ensure that they
complied with the FLSA overtime requirements.


CONCLUSIONS OF LAW

1.  Good Faith

     An employer who violates the FLSA's overtime requirements
is generally liable to its employee for the employee's "unpaid
overtime compensation" as well as "an additional equal amount as
liquidated damages."  29 U.S.C. § 216(b).  But, "if the employer
shows to the satisfaction of the court that the act or omission
giving rise to such action was in good faith and that he had
reasonable grounds for believing that his act or omission" did
not violate the FLSA, "the court may, in its sound discretion,
award no liquidated damages or award any amount thereof" not to
exceed 100% of actual damages.  29 U.S.C. § 260.

     "Liquidated damages are not a penalty exacted by the law,
but rather compensation to the employee occasioned by the delay
in receiving wages due caused by the employer's violation of the
FLSA."  Herman v. RSR Sec. Services Ltd., 172 F.3d 132, 142 (2d
Cir. 1999).  As noted, however, an exception to the FLSA's
liquidated damages rule exists "where the employer shows that,
despite its failure to pay appropriate wages, it acted in
subjective 'good faith' with objectively 'reasonable grounds'

12

for believing that its acts or omissions did not violate the FLSA." Barfield v. New York City Health and Hospitals Corp., 537 F.3d 132, 150 (2d Cir. 2008). "The employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception." Herman, 172 F.3d at 142. "To establish the requisite subjective good faith, an employer must show that it took active steps to ascertain the dictates of the FLSA and then act to comply with them." Barfield, 537 F.3d at 150 (citing Herman, 172 F.3d at 142).

GMC has not met its "difficult" burden of showing that it acted in good faith in calculating compensation for Garage Managers. GMC did not pay overtime as required by the federal and state labor laws because it chose to rely on its judgment that its Garage Managers were "exempt" employees and consequently that it had no duty under the law to pay overtime compensation. As a result, when the government investigators determined that GMC's bonus system for its Parking Attendants did not comply with the rules for payment of overtime, GMC altered its system for calculating wages for its Parking Attendants but it made no change in its system for paying its Garage Managers.

13

GMC did not act in good faith in concluding that its Garage Managers were exempt employees, however, since it did not take the "active steps" that were necessary to ascertain the dictates of the FLSA in this regard.  For example, it did not make a sufficient effort to become familiar with the salary basis test for exempt employees and the relevant regulations for that regard.  Even after McLean filed a complaint in 2001 and Ramirez filed a complaint in 2009, GMC failed to undertake any review of the law's requirements to ensure that its compensation model complied with them.

The general rule regarding the salary basis test is that the employee will be considered to be paid on a salary basis if the employee is paid a predetermined amount "without regard to the number of days or hours worked."  29 C.F.R. 541.602.  This is a long-established rule.  As noted in the Summary Judgment Opinion, the relevant federal regulation governing the salary basis test was amended in 2004, but did not materially change the rule.  69 F.R. § 22122-01 (April 23, 2004).  See also Reich v. Waldbaum, Inc., 52 F.3d 35, 40 (2d Cir. 1995) ("[I]f an employee can be docked for fractions of a workday missed, then that employee is an hourly, not a salaried, employee." (citation omitted)); Donovan v. Carls Drug Co., Inc., 703 F.2d 650, 652 (2d Cir. 1983) (salary basis test not met where employees "were

14

paid according to an hourly rate and that this hourly amount was the amount deducted for each hour of work missed"), <u>rev'd on other grounds</u>, <u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S. 128 (1988).

GMC executives were thoroughly familiar with the fact that the base pay of its Garage Managers varied depending on their schedules and hours worked in a pay period.  Instead of undertaking any active investigation to determine whether its uniquely designed pay system was in full compliance with the law, it chose to rely principally on its understanding that Garage Managers were paid well by industry standards.

GMC rests its good faith defense largely on the conversations it had with Vanegas and other government officials during the investigations of its practices in paying Parking Attendants.  First, any informal conversations do not constitute "active steps" by GMC to ascertain the dictates of the law.

Second, giving government investigators access to records and employees did not relieve GMC of its own obligation to determine what the labor laws require.  Otherwise, any government investigation of a workplace would permit an employer to claim that its continuation of its practices was undertaken in good faith.

Third, GMC has not shown that any government investigator focused with care on its time and payroll records for Garage Managers.  Unless one scrutinizes the time and payroll records for an individual employee with care and compares them from pay period to pay period, it might appear that the Garage Managers were indeed paid a predetermined amount that did not vary, and thus were the properly "salaried" managerial employees that GMC represented them to be.  GMC has offered no evidence that it pointed out to government investigators or that those investigators came to realize that the base pay fluctuated despite GMC's characterization of it as a "salary".  Without such full disclosure, GMC cannot reasonably rely on the existence of the investigations and their failure to find any inadequacies in the compensation system for Garage Managers.

Finally, GMC cannot rely on the fact that it periodically consulted with outside counsel.  GMC has invoked, as it is entitled to do, its attorney-client privilege.  But absent a waiver of the privilege, GMC cannot sustain a defense based on good faith reliance on the advice of counsel.  See In re County of Erie, 546 F.3d 222, 228 (2d Cir. 2008); United States v. Bilzerian, 926 F.2d 1285, 1292-93 (2d Cir. 1991).

2.  Willfulness

It is a closer question whether GMC's violation of the FLSA was "willful".  Considering the totality of the evidence, the plaintiffs have not met their burden of showing that GMC's Garage Manager payment practices constituted a willful FLSA violation; therefore, a two-year statute of limitations applies to plaintiffs' FLSA claims.

The statute of limitations to bring an FLSA claim is two years; if an FLSA violation was "willful", however, a three-year limitations period applies.  29 U.S.C. § 255(a).  "An employer willfully violates the FLSA when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act."  Kuebel v. Black & Decker Inc., 643 F.3d 352, 366 (2d Cir. 2011) (citation omitted).  "Mere negligence is insufficient."  Young v. Cooper Cameron Corp., 586 F.3d 201, 207 (2d Cir. 2009).  An employer may act unreasonably and yet not recklessly.  McLaughlin v. Richland Shoe Co., 486 U.S. 128, 135 n.13 (1988).  "Recklessness is defined as[,] at the least, an extreme departure from the standards of ordinary care[,] to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it."  ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 198 (2d Cir. 2009) (citation omitted)

17

(securities fraud).  Reckless disregard of a fact requires
"subjective awareness" of the probability of the existence of
the fact.  See, e.g., Celle v. Filipino Reporter Enterprises
Inc., 209 F.3d 163, 182 (2d Cir. 2000) (citation omitted)
(defamation).  "The burden is on the employee to show
willfulness."  Young, 586 F.3d at 207.  The willfulness
standards for the FLSA statute of limitations and NYLL
liquidated damages do not differ to any appreciable extent.
Kuebel, 643 F.3d at 366.

        The plaintiff does not argue that GMC had actual knowledge
that its Garage Manager compensation policies violated the FLSA.
The statute of limitations turns, therefore, on whether GMC
"showed reckless disregard for the matter of whether its conduct
was prohibited by" the FLSA.

        The plaintiffs have not shown that GMC acted in reckless
disregard of the law.  As discussed above, GMC lacked reasonable
grounds for believing that Garage Managers were exempt from the
FLSA, and that the manner in which it compensated Garage
Managers complied fully with the FLSA.  That is why GMC must pay
FLSA liquidated damages.  But, the plaintiffs have failed to
demonstrate that GMC officers were subjectively aware of a
substantial danger that their compensation system violated the
FLSA, but chose to stick with it nonetheless.

18

While it was unreasonable, for reasons already described, for GMC to rely on the four government investigations as evidence that its payment system for Garage Managers fully complied with the overtime-payment laws, it is also true that none of these investigations put GMC on notice that its compensation system violated federal or state labor laws. GMC took unreasonable comfort from the fact that its Garage Managers were well-compensated, but that very fact suggests that it was not engaged in a willful violation of the law.

The plaintiffs argue that GMC's violations were willful for essentially the same reasons that they were unreasonable. That is insufficient to meet their burden.

The circumstances of this case distinguish it from Reich v. Waldbaum, Inc., 52 F.3d 35 (2d Cir. 1995), cited by the plaintiffs. In Waldbaum, the relevant provisions of the labor law were clear at all times, as they were here, id. at 41, and there were prior government investigations of the defendant's labor law practices which "sufficed to acquaint" the defendant with the general requirements of the law, id. Based in part on these rulings, the Court of Appeals reversed the trial court's finding that the defendant's FLSA violations had not been willful. Id. at 40-41. But, the Second Circuit noted as well that one of the defendant's former executives testified that the

19

defendant knowingly risked violating the FLSA in order to save money.  Id. at 41.  There is no comparable evidence here. Indeed, the plaintiffs have not attempted to show that the overtime pay they would have been entitled to receive under the FLSA, had their base wage been treated as an hourly wage, was greater than the EC bonus payments they received.


3.  NYLL Damages Calculation

The parties also dispute several legal issues relating to the proper calculation of damages under the NYLL.  Principally, the parties dispute:  (1) whether GMC must pay liquidated damages under the NYLL; (2) if NYLL liquidated damages are awarded, whether those damages should be calculated at 25% or 100% of the plaintiffs' unpaid wages; (3) whether plaintiffs may be awarded NYLL liquidated damages on unpaid wages for the two-year period covered by their FLSA claims; and (4) whether the state or federal interest rate applies to an award of prejudgment interest.


A.  NYLL Liquidated Damages Award

As the parties note, the section of the NYLL providing for an award of liquidated damages was amended in 2009.  Prior to November 24, 2009, plaintiffs were entitled to recover

liquidated damages under the NYLL equal to 25% of unpaid wages if plaintiffs could prove that employers' NYLL violations were "willful."  See Kuebel, 643 F.3d at 366.  The NYLL now provides for a liquidated damages award "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law."  N.Y. Lab. Law § 198(1-a).  As noted above, the NYLL "willfulness" standard under the pre-amendment provision "does not appreciably differ from the FLSA's willfulness standard."  Kuebel, 643 F.3d at 366.  As for the post-amendment provision, GMC does not argue that the NYLL's "good faith" standard differs from the FLSA "good faith" standard for liquidated damages.

The plaintiffs are therefore entitled to NYLL liquidated damages for unpaid overtime wages accruing after the November 24, 2009 effective date of the amendment.  The plaintiffs are not entitled to NYLL liquidated damages on unpaid overtime wages accruing prior to the effective date of the amendment.

The plaintiffs seek to apply retroactively the November 24, 2009 amendment on liquidated damages that shifts the burden to the employer to show a good faith basis that it complied with the NYLL.  "[R]etroactive operation is not favored by New York courts and statutes will not be given such construction unless the language expressly or by necessary implication requires it."

CFCU Community Credit Union v. Hayward, 552 F.3d 253, 262 (2d
Cir. 2009) (citation omitted).  Under New York law, "[r]emedial
statutes constitute an exception to the general rule that
statutes are not to be given a retroactive operation, but only
to the extent that they do not impair vested rights."  Id.
(citation omitted).  To overcome the strong presumption that
statutes should be applied prospectively, however, "there must
be a clear expression of legislative intent to apply a statute
retroactively."  Id.  (citation omitted).  "In this context, New
York courts have found it relevant when the legislative history
reveals that the purpose of new legislation is to clarify what
the law was always meant to say and do."  Kuhne v. Cohen &
Slamowitz, LLP, 579 F.3d 189, 197 (2d Cir. 2009) (citation
omitted).

    The plaintiffs' argument that the November 24, 2009 burden-
shifting amendment should be applied retroactively fails.  There
is no statutory language suggesting a legislative intent to
apply the statute retroactively.  Moreover, the plaintiffs point
to no other evidence demonstrating a legislative intent to apply
the amendment retroactively.  Therefore, New York's presumption
against retroactivity will be enforced.

B.  Plaintiffs are entitled to 25% NYLL liquidated
damages.

The parties dispute whether NYLL liquidated damages should
be awarded at 25% or 100% of unpaid wages.  The plaintiffs seek
to apply retroactively an amendment to the NYLL, effective April
9, 2011, that increases liquidated damages from 25% to 100% of
unpaid wages.

There is no evidence of legislative intent to apply the
100% liquidated damages amendment retroactively.  The plaintiffs
cite to the amendment's Sponsor's Memorandum in arguing that the
amendment is remedial and that the New York legislature intended
for it to apply retroactively:

> JUSTIFICATION:  Studies indicated that a large number
> of employees are earning less than minimum wage . . .
> .  Many employees are also not receiving the proper
> amount of overtime compensation . . . .  The penalties
> currently in place for employers paying less than
> minimum wage are minimal and offer little deterrent --
> this will change dramatically with this legislation.
> Penalties for violating employee rights would be
> increased in order to far better protect workers'
> rights and interests.

N.Y. Spons. Mem., 2010 S.B. 8380 (Oct. 28, 2010) (emphasis
added).

The Sponsor's Memorandum evinces no legislative intent,
either expressly or by implication, that the amendment be
applied retroactively.  To the contrary, the Sponsor's
Memorandum suggests that the legislature intended to increase

the NYLL's liquidated damages penalty to better deter future
violations of the state's labor laws.  Because the plaintiffs
have failed to overcome New York's strong presumption against
applying statutes retroactively, NYLL liquidated damages shall
be assessed at 25% of unpaid wages, the rate in effect when GMC
violated the NYLL.

C.  Plaintiffs may recover NYLL liquidated damages
for unpaid wages accruing after November 24, 2009.

As discussed, the statute of limitations on the plaintiffs'
FLSA claims is two years, and the FLSA plaintiffs may recover
FLSA liquidated damages for up to two years.  The plaintiffs in
the NYLL class are also entitled to NYLL 25% liquidated damages
on unpaid wages from November 24, 2009.  The defendants argue
that the plaintiffs should not receive NYLL liquidated damages
on unpaid wages after May 12, 2008, the commencement of the FLSA
limitations period.  GMC argues, in effect, that the plaintiffs
should not receive both FLSA and NYLL liquidated damages.
According to GMC, awarding the plaintiffs both FLSA and NYLL
liquidated damages during the same period would amount to a
"double recovery".

FLSA liquidated damages and NYLL liquidated damages serve
fundamentally different purposes, and the plaintiffs are
entitled to both FLSA and NYLL liquidated damages for unpaid

24

wages.  FLSA liquidated damages represent "compensation to the
employee occasioned by the delay in receiving wages due caused
by the employer's violation of the FLSA."  Herman, 172 F.3d at
142.  For that reason, "[i]t is well settled that in an action
for violations of the Fair Labor Standards Act prejudgment
interest may not be awarded in addition to liquidated damages."
Brock v. Superior Care, Inc., 840 F.2d 1054, 1064 (2d Cir. 1988)
(per curiam).  By contrast, "liquidated damages under the [NYLL]
constitute a penalty to deter an employer's willful withholding
of wages due."  Reilly v. Natwest Markets Group Inc., 181 F.3d
253, 265 (2d Cir. 1999) (citation omitted).  Because NYLL
liquidated damages and prejudgment interest "serve fundamentally
different purposes", the Court of Appeals has observed that
plaintiffs may recover both for the same unpaid wages.  Id.
This same reasoning supports an award of both FLSA and NYLL
liquidated damages for overlapping periods of time.[2]

---

[2] GMC points to this Court's recent decision in Li Ping Fu v. Pop
Art Int'l Inc., No. 10 Civ. 8562 (DLC), 2011 WL 6092309 (S.D.N.Y
Dec. 7, 2011), which adopted the Magistrate Judge's
recommendation that where the plaintiff was entitled to FLSA
liquidated damages for overtime wage violations, he could not
also recover NYLL liquidated damages for the same period.  Id.
at *1.  As GMC concedes, however, this Court adopted that
recommendation on clear error review, because no party filed
objections to the magistrate's Report and Recommendation.  Id.

D.  NYLL Prejudgment Interest

As the parties acknowledge, courts typically award prejudgment interest on damages for NYLL violations, see Reilly, 181 F.3d at 265, but plaintiffs are not entitled to recover prejudgment interest on FLSA damages.  See Brock, 840 F.2d at 1064.  The parties dispute whether the New York or federal rate of interest applies to prejudgment interest on NYLL damages.

GMC, citing Thomas v. iStar Financial, Inc., 652 F.3d 141 (2d Cir. 2011), argues that the federal interest rate should apply because "judgments that are based on both state and federal law with respect to which no distinction is drawn shall have applicable interest calculated at the federal interest rate."  Id. at 150.  But the iStar court distinguished its holding from cases like this one where plaintiffs bring both FLSA and NYLL claims, and receive FLSA liquidated damages.  Because prejudgment interest "can only be awarded on the basis of what is solely a state claim, it is appropriate to use the state interest rate."  Id. at 150 n.7.  Pursuant to N.Y. C.P.L.R. §§ 5001(b), 5004, prejudgment interest on the plaintiffs' NYLL unpaid overtime wage damages shall be computed at a rate of nine (9) percent per annum from a single reasonable intermediate date.

4.  Method for Computing Garage Manager Damages

     The plaintiffs may be divided into two categories: (1)
Garage Managers who bring both FLSA and NYLL claims; and (2)
Garage Managers who bring only NYLL claims.

     For Garage Managers entitled to damages under both the FLSA
and the NYLL, the following summarizes the Court's conclusions
of law in this Opinion, and describes the proper method for
calculating damages.  These Garage Managers are entitled to
unpaid overtime wages accruing within the six-year NYLL
limitations period running from May 12, 2004 until May 12, 2010,
when the McLean Action was filed.[3]  They are further entitled to
FLSA liquidated damages, equaling 100% of actual damages, on
that portion of their unpaid overtime wages that accrued during
the two-year FLSA limitations period.  The FLSA statute of
limitations runs from two years prior to the date on which a
Garage Manager filed his or her consent to join the collective
action.[4]  Additionally, Garage Managers with both FLSA and NYLL
claims are entitled to 25% NYLL liquidated damages on unpaid
overtime wages accruing on or after November 24, 2009.

---

[3] Ramirez is a member of the McLean Action's NYLL class action,
but brings his FLSA claim separately.

[4] For Ramirez, the FLSA two-year statute of limitations began to
run two years prior to the date on which the Ramirez Action was
filed.

Finally, these Garage Managers are entitled to NYLL
prejudgment interest, computed at a rate of nine (9) percent per
annum from a single reasonable intermediate date, on unpaid
overtime wages for the period during which they will not receive
FLSA liquidated damages.[5]  They are not entitled to NYLL
prejudgment interest on unpaid overtime wages for which FLSA
liquidated damages will be awarded.

For those Garage Managers who did <u>not</u> give consent to join
the FLSA collective action, but who do participate in the NYLL
class action, the following summarizes the Court's conclusions
of law in this Opinion, and describes the proper method for
calculating damages.  These Garage Managers are entitled to
unpaid overtime wages accruing within the six-year NYLL
limitations period running from May 12, 2004 until May 12, 2010,
when the <u>McLean</u> Action was filed.  Additionally, they are
entitled to 25% NYLL liquidated damages on unpaid overtime wages
accruing on or after November 24, 2009.  Prejudgment interest
shall be computed at a rate of nine (9) percent per annum from a
single reasonable intermediate date.

---

[5] For most Garage Managers in this category, this period will be
approximately four years; for Ramirez, it will be somewhat less.

28

Conclusion

While GMC has not shown it acted in good faith in failing to pay Garage Managers overtime wages, the plaintiffs have also not shown that GMC's violation of law was willful.  As a result, the statute of limitations for the FLSA claims is two years and the Garage Managers will be paid FLSA liquidated damages.

Pursuant to a separate scheduling order, the parties will be given an opportunity to present their damage calculations based on this Opinion's conclusions of law, and plaintiffs' counsel will be given an opportunity to submit an application for attorneys' fees and costs.

SO ORDERED:

Dated:    New York, New York
          April 19, 2012

                                    _____
                                    DENISE COTE
                                    United States District Judge

29